UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KENNETH DUCKWORTH, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-769 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Kenneth Duckworth has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Duckworth sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Duckworth has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Duckworth requests oral argument to present legal arguments but not additional evidence. Neither party requested a <u>Pavey</u> hearing. *See* <u>Pavey v. Conley</u>, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 16], GRANTS Mr. Duckworth's

motion for summary judgment, [Doc. 30], and DENIES AS MOOT Mr. Duckworth's request for oral argument. [Doc. 43].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't defeat summary judgment by merely alleging a factual dispute; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1]     Mr. Duckworth's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 12], and he requests consolidated oral argument. [Doc. 43]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. <u>Vela v. Ind. Dep't of Corr.</u>, No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Kenneth Duckworth alleges that in January 2021 another prisoner stabbed him in the head and leg without provocation. Mr. Duckworth was treated at an area hospital then returned to the prison. The prisoner who stabbed him was in his same unit and continued to threaten him, so Mr. Duckworth asked that they be placed in different units. The prison accommodated Mr. Duckworth by placing him in restrictive housing in early March 2021. His cell had a broken window covered with sheet metal and no working light, so was extremely dark. After two weeks or so, Mr. Duckworth was moved to a different cell in the same unit. This cell had a window but still no working light, and the ground was covered in sewage. He was kept there for over a month. Mr. Duckworth claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Duckworth sued from prison, so the defendants aren't liable if they can show that Mr. Duckworth didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal

4

Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Duckworth used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Duckworth filed a grievance but didn't exhaust the appeals process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 16-2], Mr. Duckworth's grievance history, [Doc. 16-3], Mr. Duckworth's location history, [Doc. 16-4], and a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 16-1]. They include with their response in opposition to Mr. Duckworth's motion for summary judgment the complaint and grievance documents from a plaintiff who fully exhausted administrative remedies in a consolidated case, Blanchard v. Hyatte, 3:21-CV-160. [Doc. 35-1 and 35-2].

Mr. Gapski handles grievances and appeals as an offender grievance specialist at Miami Correctional Facility. He attests to the steps prescribed by the grievance policy and attests that that's the only official policy. He reviewed Mr. Duckworth's grievance records and explains that no record of any appeal exists.

The defendants' copy of Mr. Duckworth's grievance log shows grievances relating to safety, sanitation, and environmental conditions for the period when Mr. Duckworth was in restrictive housing as well as grievances on other issues unrelated to prison conditions, but no appeals.

6

*Mr. Duckworth's Account*

Mr. Duckworth asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 28-7 at 21–24], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 28-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 28-2 to 28-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 28-6].

According to Mr. Duckworth, he was placed in restrictive housing cell A-129 in early March 2021. The cell had no light and had a covered window. He filed three grievances about the cell's condition and gave them to Mr. Grove, a counselor on the unit. Mr. Duckworth received no response.

After two weeks in cell A-129, Mr. Duckworth was moved to cell A-151. Mr. Duckworth filed several grievances about the cell conditions. Some received responses while other went unanswered. Mr. Duckworth marked "disagree" on each of the responses he received and gave those forms to the unit counselor. He didn't have the appeal form so couldn't complete the appeal form. He believed he was to receive a blank appeal form after marking "disagree" on the response and returning it. Mr. Duckworth also wrote grievances on blank paper and labelled them "emergency grievances" but heard no response.

At one point, Ms. Hall, a correctional officer, gave Mr. Duckworth and helped him complete an appeal form. He couldn't fully complete the form because it required the number of the grievance being appealed. He didn't have that number because he didn't receive a response to the grievance. Nevertheless, he gave the appeal form to the unit team manager. Mr. Duckworth received no response.

Later, when Mr. Duckworth was out of restrictive housing, he asked a counselor what to do about the non-responses. The counselor told him he could write to the warden. Mr. Duckworth sent a request for interview form to Deputy Warden Payne but heard nothing in response. He also got a blank appeal form while out of restrictive housing, filled it out except for the grievance number that he didn't have, and submitted it to the unit counselor.

Mr. Duckworth presents Mr. Gapski's testimony as evidence that the grievance process was unavailable. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Duckworth's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer

8

accepted a grievance, or what happened to a grievance that was sent but never received.

He also discusses appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 16-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, detailing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 28-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Duckworth also presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

DISCUSSION

Mr. Duckworth and the defendants move for summary judgment on the exhaustion defense. The governing law is set out thoroughly in the court's order on cross-motions for summary judgment in <u>Rollins v. Hyatte</u>, 3:21-CV-767-RLM-MGG, slip op. at 11–12, and the court adopts by reference discussion of the governing law.

Warden Hyatte and Deputy Warden Payne move for summary judgment, arguing that their records don't show any appeals, so Mr. Duckworth must not have exhausted administrative grievances. Mr. Duckworth disagrees, arguing that he's entitled to judgment on the exhaustion defense because appeals weren't available for non-responses.

Approaching from Mr. Duckworth's perspective makes for a clearer picture.

Mr. Duckworth points to his actions and Miami Correctional Facility's inaction and silence to show that he exhausted available remedies. He says in his declaration that several of his grievances didn't receive responses. The responses that he received didn't include the appeal form. Mr. Duckworth needed the appeal form to file an appeal. When he returned the response form marked "disagree," he was never given the appeal form. Nor could Mr. Duckworth appeal a non-response, because appealing required knowing the grievance number and a grievance number is unavailable without a response. Appealing was impossible for Mr. Duckworth, so appeals were a dead end and thus unavailable. *See* Ross v. Blake, 578 U.S. 632, 643 (2016) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end.")

Combining the written policy and Mr. Gapski's testimony about how appeals work in practice confirm Mr. Duckworth's claim.

According to policy, a grievance specialist is to send the prisoner an "unacceptable form" rejecting a grievance or a notice of receipt of an accepted grievance within ten business days of receipt. If the prisoner doesn't receive either within ten business days of submitting it, the prisoner is to notify the grievance specialist of the non-response and retain a copy of the prisoner's own notice to the grievance specialist. The grievance specialist is to respond to that notice within ten business days. The policy then also requires that a grievance

11

specialist respond to a grievance within fifteen business days of receipt. If a prisoner doesn't receive a response within twenty business days of when the grievance specialists receive a grievance, a prisoner is to appeal as if a response came. The warden is to respond to an appeal within ten business days of receiving the appeal. If he doesn't respond by then, a prisoner can appeal as if a response had come. Under these rules, Mr. Duckworth exhaust administrative remedies only if he appeals the lack of a response to a grievance as well as appeals the response to the appeal (or non-response).

This appeals process makes little sense for non-responses. The part of the policy requiring that a prisoner file a notice of non-response says that the prisoner must do so if ten business days have passed since submitting a grievance. It doesn't give a deadline by which the prisoner must notify the grievance specialist, suggesting that the step isn't mandatory. Nor does the policy define when a grievance is "submitted." Most deadlines in the grievance policy are based on when a prison official receives a grievance or appeal. It's unclear if a grievance is submitted when the grievance is received, which the prisoner would have no way of knowing, or when the prisoner signed the grievance, hands it to a prison official, or puts it in an outbox, which the policy doesn't address. The policy doesn't say how to provide this notice and the prison don't have a form for this purpose; Mr. Gapski testified that there's not a standard form and prisoners can "write on anything." [Doc. 28-1 at 33].

This step's necessity is further obscured by its relation to the first-level appeal. First, the policy at one point says a prisoner "shall" notify the grievance

specialist of a non-response, [Doc. 16-2 at 9], while saying at another point that the only recognized process includes: (1) a formal attempt to resolve concerns; (2) a written appeal to the warden; and (3) a written appeal to the department grievance manager. [Doc. 16-2 at 3]. Second, the policy says a prisoner can appeal a non-response as if there'd been a response if twenty business days have passed from the grievance specialist's receipt of the grievance. The policy doesn't say that the prisoner can appeal only once he's filed a notice of non-response or once a grievance specialist has responded to a notice of non-response. This part of the policy is opaque and incapable of use for non-responses.

Appealing non-responses is likewise opaque. The prisoner can notify the grievance specialist of a non-response after ten days of submitting it, but a prisoner can file an appeal only by filing State Form 45473. Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with "disagree" before receiving State Form 45473. But a prisoner can't mark "disagree" on a form he never receives. This is a dead end.

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how a prisoner is to get a copy of State Form 45473, much less how a prisoner in restrictive housing, like Mr. Duckworth was, is to get ahold of State Form 45473.

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level

response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that they don't have and that might not even exist.

If Mr. Duckworth is believed, then he exhausted available remedies. Appealing non-responses wasn't an option because a prisoner who receives no response can't mark "disagree" on a form that is never received and that might not even exist, nor can he write the grievance number that hasn't been given to him on an appeal form. On the occasion that a prisoner gets a response and marks "disagree," he has to wait to receive a blank appeal form even though this step isn't in the written policy. If it doesn't come, there's no practical way to appeal. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Duckworth "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).

Warden Hyatte and Deputy Warden Payne argue that Mr. Duckworth didn't submit grievance records because "[t]here are no grievance records attached to Mr. Duckworth's affidavit testimony." [Doc. 37 at 1]. This argument seems to rely tacitly on the supposed rule that a self-serving declaration can't create an issue of fact at summary judgment. A declaration's self-serving nature isn't reason to disregard it at summary judgment, as has been the law in this

circuit for a decade or more. Hill v. Tangherlini, 724 F.3d 965, 967–968 (7th Cir. 2013) ("[T]he term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). Nor do the defendants suggest how Mr. Duckworth could attach grievances that he claims weren't returned to him. *See* Reid v. Marzano, No. 9:15-CV-761, 2017 U.S. Dist. LEXIS 38547, at *10 (N.D.N.Y. Mar. 17, 2017) ("It is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers.").

The defendants argue that the court should strike all hearsay statements. A statement is hearsay if it is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay isn't to be used at summary judgment. Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009). The defendants object to Mr. Duckworth's assertions that prison officials told him to respond to non-responses in certain ways. The defendants correctly point out that the statements are offered for the effect on the listener. The hearsay objection is overruled.

Next, the defendants object to the Ombudsman's testimony as irrelevant because the Ombudsman doesn't work for the prison, have authority over grievances, or have input into grievances. Evidence is relevant if it tends to make a fact of consequence more or less likely than it would be absent the evidence. Fed. R. Evid. 401. Evidence from the Ombudsman would tend to show that Miami Correctional Facility didn't ensure that every grievance got from the prisoner sending it to the grievance office. The objection is overruled.

15

The defendants then argue that the process was available to Mr. Duckworth because: (1) he was told about how the process works during orientation; (2) other prisoners, specifically Jeremy Blanchard, fully exhausted the written process; and (3) Mr. Duckworth received at least one appeal form.

None of these is persuasive. First, whether Mr. Duckworth learned about the process at orientation doesn't respond to his assertions that the process was practically unavailable. His knowledge of the written policy wouldn't make up for gaps in the policy. Second, Mr. Blanchard's experience doesn't put into dispute Mr. Duckworth's claims. Mr. Blanchard evidently received responses at each step, so could fully exhaust grievances. He, unlike Mr. Duckworth, didn't claim that he never received proper responses or appeal forms. Third, Mr. Duckworth's receipt of a blank appeal form doesn't make up for the policy's requirement that appeals include the grievance number. When Mr. Duckworth was given appeal forms, he wasn't given his grievance number, so the appeals process was unavailable.

The defendants argue that "the plain language of the grievance policy demonstrates that even where an offender does not receive a facility level response to a first-level appeal, the second-level appeal . . . remains available." [Doc. 37 at 3]. This argument focuses solely on the written language instead of Mr. Duckworth's evidence that appeals were handled differently and his accurate assertion that the policy didn't explain how to file an appeal for a non-response. The plain language of the policy purports to make appeals available, but no policy language explains how to appeal without a response.

16

Finally, the defendants argue that Mr. Duckworth should have informed the grievance specialist that he wasn't receiving responses. For reasons explained before, the requirement that a prisoner inform a grievance specialist of a non-response wasn't standardized, lacked deadlines, and conflicted with other policy provisions, so can't be held against a prisoner. At any rate, Mr. Duckworth tried to comply by speaking to counselors and requesting an interview with Deputy Warden Payne.

In summary, the defendants haven't created a genuine dispute of material fact as to whether administrative remedies were available to Mr. Duckworth. The remedies they say Mr. Duckworth didn't exhaust weren't available to him because of policy and practice. Their argument to the contrary rests on the faulty premise that a grievance doesn't get logged only if a prisoner doesn't file it. But Mr. Gapski's testimony shows that a grievance could go missing or get lost for any number of reasons and a grievance specialist wouldn't know. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011). The defendants' evidence is consistent with Mr. Duckworth's claims, so doesn't create a genuine issue as to whether administrative remedies

were available to Mr. Duckworth. Administrative remedies weren't available to Mr. Duckworth, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a <u>Pavey</u> hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. <u>Bessler v. Wexford of Ind. LLC</u>, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a <u>Pavey</u> hearing and the consistency between Mr. Duckworth's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Duckworth's motion for summary judgment without a <u>Pavey</u> hearing.

Mr. Duckworth requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Duckworth's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT. Mr. Duckworth's motion for consolidated oral argument.

SO ORDERED.

18

ENTERED:   August 15, 2023

                                          /s/ Robert L. Miller, Jr.
                                   Judge, United States District Court